## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WILMER ARMANDO GONZALEZ GARCIA,   *

    Petitioner,   *

  v.   *   Civ. No. 1:26-cv-02243-PX

MARKWAYNE MULLIN *et al.*,   *

    Respondents.   *

***

## <u>MEMORANDUM ORDER</u>

Pending is Petitioner Wilmer Armando Gonzalez Garcia ("Garcia")'s Amended Petition for a Writ of Habeas Corpus and Motion for Temporary Restraining Order.  ECF Nos. 7 & 8. After full briefing, the Amended Petition is granted and Garcia is ordered released on the previous Order of Supervision ("OSUP") and will not be re-detained absent Respondents' showing that they will accord sufficient process contemporaneous with a decision on the propriety of detention.

Garcia is a citizen of Guatemala who first entered the United States without authorization in 2014.  ECF No. 8 ¶ 1;  ECF No. 13-2.  A border patrol agent issued a notice and expedited order of removal.  ECF No. 13-2.  In 2021, Garcia returned to the United States.  ECF No. 8 ¶ 1. Respondents, specifically Immigration and Customs Enforcement ("ICE"), released Garcia on an OSUP which required Garcia to remain within Maryland, assist the Department of Homeland Security with obtaining necessary travel documents, and report as directed.  ECF No. 8-1.  Since his release on OSUP, Garcia has complied with his OSUP to include annual ICE check-in appointments.  ECF No. 8 ¶¶ 3, 14.  Garcia also submitted an I-589 application for asylum or withholding of removal to Guatemala.  ECF No. 8-2.  The status of that application is "pending." ECF No. 8 ¶ 2.

1

On June 5, 2026, Garcia and his wife (who has the same status as he) reported to the Baltimore ICE Field Office as directed. ECF No. 8 ¶ 14. Without warning, ICE took Garcia into custody and provided Garcia no notice or opportunity to be heard. *Id.*[1] The same day, Garcia filed his initial Petition for a Writ of Habeas Corpus. ECF No. 1. He next filed a motion for Temporary Restraining Order ("TRO") (ECF No. 7) and an Amended Petition (ECF No. 8).

Three weeks later, during which time Garcia remained in ICE custody, ICE prepared a "Notice of Revocation of Release" ("NRR") effectuated pursuant to 8 C.F.R. § 241.13(i) (ECF No. 13-5) and an "Alien Informal Interview" which purports to memorialize Garcia's opportunity to contest his revocation of OSUP as required under 8 C.F.R. §§ 241.4(*l*) or 241.13.(i) (ECF No. 13-6). The NRR appears to have been digitally signed by Assistant Field Office Director Mark Graham on June 24, 2026, and presented to Garcia the following day. ECF No. 13-5. The NRR reads that Garcia's OSUP is "hereby revoked." ECF No. 13-5. Graham also checked the box of preprinted language that advised Garcia his release is revoked "pursuant to 8 C.F.R. § 241.13(i)" because "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future;" and that ICE is "seeking a travel document to effect [his] expeditious removal to Guatemala"—the very country for which Garcia's application for protection remains pending. *Id.*; *see also* ECF No. 8-2.

Garcia seeks immediate release because he was denied any process in advance of his unwarned detention and, if not for this case, he would have received no process at all. ECF No. 8 & 14. Garcia also makes the closely related claim that Respondents failed to follow their own

---

[1] ICE did execute a Form I-205 Warrant of Removal, purportedly signed by Acting Field Office Director, Vernon Liggins. ECF No. 13-3. The Court questions whether Liggins even signed this document because the signature appears identical to that of ICE officer "Young" who has signed similar documents in this and other cases on his own behalf and for Liggins. *Compare* ECF No. 13-3 at 1 *with Barahona Jovel v. Mullin, et al.*, Case No. 26-cv-2357-PX at ECF Nos. 11-1 and 11-2. *Compare also* ECF No. 13-4 *with* ECF No. 13-3 at 1.

regulations to provide notice and opportunity to be heard, thus violating the *Accardi* doctrine as announced in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The *Accardi* doctrine provides that where an agency fails "to afford an individual procedural safeguards required under its own regulations," the agency action may be invalidated upon a showing of "prejudice resulting from the violation." *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999); *United States ex rel. Accardi*, 347 U.S. at 268. Prejudice is "presume[ed]" however, where "an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986).

The Court easily concludes that Garcia was detained without any notice and an opportunity to be heard. ICE took Garcia into custody on June 5, 2026, and did nothing to comply with the law or the constitution when taking away his liberty. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (the liberty interest of freedom from detention "lies at the heart" of "the Due Process Clause [which] applies to all persons within the United States, including aliens.") (citation omitted).

Nor does ICE's slapdash effort to throw some paperwork Garcia's way, weeks after his detention, "remedy" the problem as Respondents suggest. ECF No. 13-1 at 6–7. For one, the NRR constitutes no meaningful "notice," not only because Respondents had already decided to detain Garcia three weeks prior but also because ICE notified Garcia of the wrong regulatory provision. ECF No. 13-5. Section 241.13(i) applies to noncitizens who have been *detained* beyond the 90-day removal period following a final order of removal. 8 U.S.C. § 1231; 8 C.F.R. § 241.13(i). *See Marroquin Escobar v. Noem,* Civ No. 26-cv-00590-PX, ECF No. 22 at 5–6 (Memorandum Order memorializing Respondents' agreement that § 241.13(i) does not apply where a noncitizen has been on release). Section 241.13 accordingly sets out different notice

3

requirements and a different procedural scheme than that which applies to Garcia, 8 C.F.R. § 241.4(*l*).[2]  Moreover, even if § 241.13(i) applied, the Court is hard-pressed to find that this NRR form provides adequate notice; it tells Garcia that "circumstances have changed" without any explanation so that Garcia could meaningfully respond.  ECF No. 13-5 at 2.

As for an opportunity to be heard in advance of detention, the "Alien Informal Interview" form confirms that Garcia was offered no such opportunity.  ECF No. 13-6.  Putting to one side that nothing on the form reflects the length of the interview, the way it took place, or whether it had been conducted in a language Garcia could understand, the "interview" occurred *three weeks* after the decision to detain Garcia.  *Id*.  This is especially problematic when considering Garcia has been on an OSUP for *five years* without incident, and he was never given the opportunity to demonstrate the propriety of continued release pending a credible fear hearing that Respondents agree Garcia must receive and has not yet occurred.  ECF No. 13-1 at 10.

From this, the Court cannot conclude that ICE complied with its own regulations or offered Garcia a modicum of due process in advance of his detention.  Respondents' failure to follow its own regulations concerning revocation of release violates the *Accardi* doctrine and the due process protections inherent within those regulations.  *See, e.g.*, *Samahn v. Noem et al.*, No. 25-CV-25618, 2026 WL 911290, at *6 (S.D. Fla. Apr. 2, 2026);  *Ahmed v. Olson*, No. CV 26-89-DLB, 2026 WL 836123, at *5 (E.D. Ky. Mar. 26, 2026); *Sombuoune Virachak* v. *Juan Baltazar et al.*, No. 26-CV-00391-STV, 2026 WL 746285, at *4–5 (D. Colo. Mar. 17, 2026); *Alcivar Lorenzo v. Raycraf*, No. 1:26-CV-77, 2026 WL 369349, at *6 (W.D. Mich. Feb. 10, 2026); *Rodriguez Romero v. Ladwig*,

---

[2] 8 C.F.R. § 241.4(*l*) requires that revocation of a noncitizen's release be approved by the ICE District Director, as delegated to the Field Office Director, if the Field Office Director concludes that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."  § 241.4(l)(2).  The regulation also requires that ICE inform the noncitizen of the reasons for his detention and allow him to be heard upon revocation.  *Id*.  *See also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).

No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *7–8 (M.D. La. Feb. 6, 2026); *Arman Kesheshian v. Kristi Noem et al.*, No. 5:25-CV-03478-MWC-DFM, 2025 WL 4227216, at *5 (C.D. Cal. Dec. 24, 2025); *N.A.L.R. v. Bondi*, No. 4:25-CV-00192-SEB-KMB, 2025 WL 2987239, at *2 (S.D. Ind. Oct. 23, 2025); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *5 (W.D. Ky. Sept. 4, 2025).

Again, the Court reminds ICE it cannot revoke release unless it follows the "procedural framework designed to insure the fair processing of an action affecting an individual." *Lu v. Noem*, No. 25-CV-00390-MSN-DD, 2026 WL 1244546, at *5 (E.D. Va. Mar. 2, 2026) (internal citation omitted). *See also Santamaria Orellana*, 2025 WL 2841886, at *5. *See also Ceesay v. Kurzdorfer,* 781 F. Supp. 3d 137, 162 (W.D.N.Y. 2025); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025). Nor can the provision of due process depend on whether a noncitizen files a habeas petition. But that is precisely what Respondents suggest when they maintain they have "remedied" the problem through their hastily executed, barebones forms, that do not even invoke applicable procedure. As a result, the Court concludes that Garcia's continued detention violates the *Accardi* doctrine and his right to due process.

It is this 9th day of July 2026, by the United States District Court for the District of Maryland, hereby **ORDERED** that:

1.   Petitioner Wilmer Armando Gonzalez Garcia's Amended Petition (ECF No. 8) is **GRANTED;**

2.   Garcia's Motion for Temporary Restraining Order (ECF No. 7) is **DENIED as MOOT;**

3.  Respondents are **DIRECTED** to release Garcia on or before **July 10, 2026, at 5:00 PM**, under the same ICE supervision conditions in effect before his June 5, 2026, detention;

4.  The parties **SHALL** file a joint status report by **July 13, 2026,** to confirm Garcia's release from detention;

5.  Respondents are **ENJOINED** from re-detaining Garcia absent a showing that they have accorded him notice and an opportunity to be heard in compliance with 8 C.F.R. § 241.4(*l*) and related regulations, and upon a showing that he will be provided his credible fear interview, all in advance of any detention;

6.  If Respondents intend to re-detain Garcia, Respondents must first file a status report with the Court articulating the steps they will take to comply with the above in advance of his detention; and

7.  The Court shall **RETAIN** jurisdiction of this matter to enforce compliance.

_____/s/_____
Paula Xinis
United States District Judge
